## COUCH et al. v. HARP et al., Appellants.

### Division One, February 22, 1907.

1. **RES ADJUDICATA: No Adjudication on Merits.** Where the merits were not tried in the former suit, or were not settled by the agreement to dismiss, the plea of *res adjudicata* is not availing.

2. **RESULTING TRUST: Deed to Daughter: Insane Father.** The rule that where a purchaser of land pays the purchase money and causes the deed to be made to a child, no resulting trust arises for the benefit of himself or his heirs, does not control if the purchaser at the time the deed was made to the child was insane. A confessed insane man can make no transfer of property, by deed or gift, which may not be assailed by him or his representatives or heirs.

3. ——: ——: ——: **Defenses: Bond for Deed to Daughter's Husband.** Andrew Rice conveyed land to Couch's daughter, for $400 paid by Couch, who was at the time insane. Couch's other heirs sue the daughter and her husband to establish a resulting trust. At the trial defendants offered evidence, without objection, that Rice's son, who for a time was a record owner of the title, had given a title bond to the husband by which, upon the payment of $400, evidenced by notes maturing later, he obligated himself to convey the land to the husband, and then conveyed to his father, the said Andrew. The husband and his wife filed an answer in which they say nothing about this transaction, but deny only the insanity of Couch and the fact that he paid the full purchase price for the land. At the time the deed was made the question of interest was discussed and Couch refused to pay more than $400, and the deed was made to the daughter, but no positive evidence was produced as to the interest paid. *Held,* first, that the husband was in court, and if he desired to claim an interest in the land by virtue of a

payment of a part of the purchase money, he should have spoken as to the amount; second, if he intended to rely upon his bond for a deed, he should have pleaded this outstanding title; third, the testimony as to the title bond was wrongfully admitted, under the pleadings; and, fourth, the bond for a deed not being in evidence, and its terms and conditions not being shown, it cannot be assumed that there was not a breach thereof before Couch paid the $400 for the deed to the daughter.

Appeal from Ralls Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Roy & Hays* for appellants.

(1) George P. Rice executed title bond for the land to defendant Henry C. Harp for consideration of $400 to be paid in one, two, three and four years, at seven or eight per cent. This was done with the consent of A. J. Rice. George P. Rice then conveyed to A. J. Rice. Henry C. Harp paid the interest for two or three years to A. J. Rice, who then conveyed to defendant Margaret L. Harp, upon the payment of the principal $400 by Couch, the deceased. There is nothing to show that either of defendants, Margaret L. Harp or Henry C. Harp, knew of the payment of the $400 at the time, or consented to it. By the title bond Henry C. Harp became entitled to the deed to the land upon the payment of $400 and interest. The interest he paid. The subsequent payment of the $400 by Couch could not raise a resulting trust in Couch. In order to create a resulting trust, it is absolutely indispensable that the payment should be actually made by the beneficiary, or that an absolute obligation to pay should be incurred by him as a part of the original contract of purchase, at or before the time of the conveyance. No subsequent and entirely independent conduct, intervention or payment on his part would raise any resulting trust. Weiss v. Heilkamp, 127 Mo. 31; 1 Perry on Trusts (4 Ed.),

sec. 76; Bispham's Equity (4 Ed.), secs. 81-82; Sell v. West, 125 Mo. 631; Kelly v. Johnson 28 Mo. 249. (2) The courts should not, in order to establish a resulting trust, deprive a party of his interest in land without his consent and without compensation. Henry C. Harp was the equitable owner of the land, and entitled to the legal title upon the payment of $400. How could Couch, without Henry C. Harp's consent, deprive him of his rights, by paying any part of the purchase money? If the land had been conveyed to Couch himself, instead of to Mrs. Harp, then Henry C. Harp could have compelled Couch to convey to him (Harp) on the payment of the $400. The husband, Henry C. Harp, is now entitled, on the facts shown in evidence, to have the title decreed in him upon the payment of the $400 against all the parties concerned, and even against his wife. The presumption in favor of a resulting trust can be overthrown by showing that such was not the intent of the parties. Morris v. Clare, 132 Mo. 236; Darrier v. Darrier, 58 Mo. 222. (3) The evidence shows that the former case, involving the issues between the same parties, was by agreement of parties dismissed upon the withdrawal of the plaintiffs' cost bond by agreement. This operated as *res judicata.* Freeman on Judgments (1 Ed.), sec. 262; 2 Beach on Judgments, secs. 705 and 706.

*J. O. Allison* and *E. L. Corwine* for respondents.

(1) Equity will declare a constructive trust on the facts shown in evidence. The consideration for the transfer is paid with money of Couch, who is admitted to be incompetent. Plaintiffs, the heirs of Couch, have no remedy against A. J. Rice, the grantor, who is shown to be insolvent. Margaret L. Harp having obtained the legal title to the land with the money of Couch (who cannot make a gift), holds the same in trust for Couch's heirs. Constructive trusts are those

which are "superinduced upon the transaction by operation of law as matters of equity independently of the intention of the parties." The principle is simply that equity will not permit one to obtain an unearned benefit at the cost of another without that other's consent. 2 Pomeroy's Equity Jurisprudence (2 Ed.), secs. 987, 1044; Bispham's Principles of Equity (4 Ed.), sec. 91; Clark v. Bank, 57 Mo. App. 277; Harrison v. Murphy, 106 Mo. App. 465; Crawford v. Jones, 163 Mo. 577. (2) Plea of *res adjudicata* admits plaintiffs' *prima facie* case. Stone v. United Workmen, 117 Mo. App. 295. (3) The former case, judgment on which is pleaded as a bar by appellants, was not tried on its merits. Nor was there an agreement as to the merits by stipulation or otherwise, nor any adjustment of the property rights. The parties were not the same in the former suit. Isabella A. Couch was a party defendant there and is not a party here. The minor defendants, Elmer and Lizzie Lawson, were not represented by guardian or next friend in said former suit. In order to support the plea of *res adjudicata*, there must be a judgment on the merits in a case involving the same subject-matter between the same parties plaintiff and defendant, all of whom must be *sui juris*. Tutt v. Price, 7 Mo. App. 194; City of Springfield v. Plummer, 89 Mo. App. 515; Short v. Taylor, 137 Mo. 517; Baldwin v. Donaldson, 139 Mo. 118.

GRAVES, J.—Action to declare a trust in fifty-five acres of land in Ralls county and to partition the same among the beneficiaries of the trust. Plaintiffs and defendants, with the exception of Henry C. Harp, are the heirs at law of Jacob W. Couch, deceased. Henry C. Harp, defendant, is the husband of defendant, Margaret L. Harp, who is a daughter and one of the seven children of said Jacob W. Couch. By the petition it is charged that the land in question was conveyed by Andrew J. Rice and wife to defendant Mar-

garet L. Harp, but that the purchase price of four hundred dollars was paid by Jacob W. Couch, who at the time and for a long time prior was insane and so remained insane to the date of his death and that he was in no mental condition to make a valid gift to Mrs. Harp either in money or land. Plaintiffs asked the court to declare that Margaret L. Harp held the land in trust for herself and the other heirs of said Couch, deceased, and to partition it among them.

The joint answer of defendants Margaret L. Harp and Henry C. Harp admit the allegations of the petition as to the death of Jacob W. Couch, intestate, and the legal heirs of said Couch; admit that they are in possession and had been since November 21, 1895; admit the execution of the deed by Rice and wife on November 21, 1895, but as to this transaction they add: "These defendants deny that neither the said Margaret L. Harp nor said Henry L. Harp at said date or at any other time paid the purchase price of said lands or any part thereof and that the purchase price was paid by Jacob W. Couch and aver that the purchase price of said lands was paid at least in part by Henry C. Harp. And defendants deny each and every allegation in said petition contained not hereinabove specially admitted to be true."

There then follows a plea of former adjudication.

The guardian *ad litem* of the other defendants admits the title to the land as pleaded by the plaintiffs. Reply was general denial.

On the trial it was admitted that Jacob W. Couch was of unsound mind as alleged in the petition. It was conclusively shown that he paid to Rice the $400 for the land, and directed the deed made to Margaret L. Harp. It was further shown, as charged in the petition, that Rice was and had been at all times insolvent. Although not specifically pleaded by the Harps it was developed by the testimony of a witness for plaintiffs, George P. Rice, that he, witness, held, at one time, title to the

land; that while he so held title, with the consent of his father A. J. Rice, he sold the land to Henry C. Harp for $400, taking notes for the purchase price and giving a bond for a deed. That he then conveyed to A. J. Rice, his father. This testimony seems to have gone without objection. The same witness testified that Henry C. Harp had, as he, witness, thought, paid interest on the notes to his father. The notes and alleged bond for deed were not introduced. It also appears from the evidence that Jacob W. Couch, deceased, refused to pay the back interest at the date of the deed; what the amount of the alleged back interest was, does not appear. But whatever it was, the $400 was accepted in full payment for the land.

The decree of the court was in favor of plaintiffs and in accordance with the prayer of their petition, both as to declaring the trust and the partition of the land. Motions for new trial and in arrest of judgment proving unavailing, defendants, Harps, appealed.

I. We will take the question of *res adjudicata* first, and in disposing of this question a little fuller statement of the facts upon that point will be required. In 1902, the same plaintiffs instituted a similar suit to the one at bar. The defendants were the same, except Isabella A. Couch was a defendant in that case and not in this case. She was the widow of Jacob W. Couch, deceased, and had died prior to the institution of the present suit. Motion for cost bond was filed in this former suit. Motion was sustained and a cost bond filed. The two Harps filed their joint answer. No guardian *ad litem* was appointed for the two minor defendants, Elmer and Lizzie Lawson. On this state of the record, the court entered the following order:

"On this day come the parties herein by their respective attorneys, and by agreement of parties, the court doth grant the plaintiffs leave to withdraw their

bond for costs filed in this cause. And thereupon by agreement of the parties herein this cause is by order of the court dismissed at plaintiffs' costs. Wherefore it is considered and adjudged by the court that plaintiffs take nothing by their writ herein, and that defendants go hereof without day and have and recover of the plaintiffs all their costs herein incurred and have hereof their execution therefor.''

The abstract before us then shows the following as to the oral testimony upon this question:

"T. C. Hays testified: I was counsel for defendants, Harp and Harp, in said former case. The facts in controversy are the same in both cases and the same parties except that Isabella Couch, defendant in former case, widow of Jacob W. Couch, whose dower interest died with her. The consideration for the agreement to withdraw cost bond in former case, as I understand it, was the dismissal of the case.

"Cross-Examination. There was no money or property adjustment of the case.

"Plaintiffs' evidence in rebuttal:

"E. L. Corwine testified: I was counsel for plaintiffs in said former suit. That case was simply dismissed. The cost bond was withdrawn by agreement and the case dismissed by plaintiff.

"This was all the evidence in the case.''

From this it appears that there was no trial of the merits at all. And further in the language of the counsel for the Harps, who was testifying for them as a witness in the case at bar, "there was no money or property adjustment of the case.'' In fact, there could have been no valid adjustment with the two minor defendants, Elmer and Lizzie Lawson, who were in court, it is true, but without a guardian *ad litem* up to the time of the dismissal of the original cause.

The subject-matter of the former suit is the same as in this case; we likewise have the identity of the cause of action, identity as to the quality of the persons

for and against whom the claim is made, and with the exception of Isabella A. Couch, widow of the deceased, Jacob W. Couch, identity of the parties. She at most held only a dower interest, which died with her, so that we think there was identity of parties. These four identities meet the requirements of the theory and doctrine of *res adjudicata*. [Pickel Stone Co. v. Wall, 108 Mo. App. 495.]

But the trouble about the case at bar is, that while the subject-matter is identical and the cause of action as set out in the pleadings is identical, there was no trial and judgment upon the merits of the controversy. Under such circumstances the plea of *res adjudicata* must fail. [Baldwin v. Davidson, 139 Mo. 118; Short v. Taylor, 137 Mo. 517.]

The most we make of this record pleaded as *res adjudicata* is that there was an agreement to the effect that the plaintiffs could withdraw the cost bond filed, and could thereupon dismiss their case at their costs. The merits were never tried or even settled, and the trial court was right in so holding. We therefore rule the plea of *res adjudicata* against the defendants.

II. We reach now the alleged error of the trial court in declaring the trust and partitioning the estate, under the evidence, notwithstanding its adverse ruling as to the question of *res adjudicata*.

We think the true rule is announced by SHERWOOD, J., in Darrier v. Darrier, 58 Mo. l. c. 226, where it is said:

"Where the purchaser of land pays the purchase money and takes the title in the name of a stranger, the presumption at once arises that the benefits accruing from the purchase are to go to him who paid the consideration. But a different rule prevails and a different presumption springs into being where, under similar circumstances, the conveyance is taken in the name of a wife or child; there, the obligation under which the

purchaser rests to provide for the one in whose name the title is taken, will countervail any inference that a resulting trust was intended in facor of the actual purchaser. [Perry on Trusts, sec 143; 2 Sto. Eq. Jur. sec. 1201, and cases cited.]"

Had Jacob W. Couch, deceased, been of sound mind, at the time he purchased this property and paid the consideration, and had then directed the deed made to his daughter, Mrs. Harp, as he did do, there would be no question in this case.   In other words, but for the admitted insanity of the said Couch, there would clearly be no resulting trust.  Had he, in full power of mind, directed the deed to a stranger, a resulting trust arises, but not so, without further proof, as to a wife or child.   Under proper conditions and surroundings he would have had, being of sound mind, the right to give the property to the wife or child, so that on the face of this transaction, without the admission of insanity, we would be constrained to hold that there was no result-ing trust.   [15 Am. and Eng. Ency. Law (2 Ed.), 1126.]

But when we take the whole evidence, including the admission of insanity, a totally different question is presented.  It requires no citation of authority that a confessed insane man can make no transfer of property, whether by deed or gift, which may not be attack-ed by him or his representatives or heirs.  The heirs at-tack it here.  The parties holding property show no equities whatever.   Under such circumstances the doctrine is announced thus in 15 Am. and Eng. Ency. Law (2 Ed.), 1127:  "Where property is conveyed by a person *non sui juris* the grantee may be held a trus-tee."

So that in our judgment there was no error upon the part of the trial court in declaring the trust, unless it be by what will be discussed in the succeeding paragraph.

III. The next and last contention upon the part of defendant is that the evidence shows that George P. Rice, who for awhile was the record owner of the land, had given a title bond to defendant Henry G. Harp, by which upon the payment of $400 evidenced by notes maturing later, he obligated himself to convey the said land to said Harp. As stated there is such oral evidence in the record, going in without objection, but the notes and bond for deed are not in evidence. Further, Henry C. Harp is a defendant and with his wife files an answer, in which nothing is said about such a conveyance. The only thing he denies in the answer is the alleged insanity of Couch, deceased, and the fact that Couch, deceased, paid the full purchase price for the land. The agreed purchase price to Harp was $400, and the agreed purchase price to Jacob W. Couch, deceased, was $400, and Couch paid this sum. It appears that at the time the deed was made, the question of interest was discussed and he refused to pay more than $400, and thereupon the deed was made to Mrs. Harp, at his, Couch's direction. No positive evidence is introduced as to the amount of interest, if any, paid by Henry C. Harp. One witness thinks he paid interest for a year or two, but does not know. Harp is a defendant and tries to make no further showing than this incidental testimony, admitted wrongfully under the pleadings, but without objection.

. Under these circumstances, we think first, that if he desired to claim an interest in the land, by virtue of a payment of a part of the purchase money, he was in court and could have spoken as to the amount, and, secondly, if he is relying upon his bond for a deed, he should have pleaded this outstanding title, if in fact there was such. It might be well to add that there is no evidence of such instrument being of record.

Further, even if he had a bond for a deed from the younger Rice, yet the terms and conditions thereof are not shown, and there may have been a breach thereof

upon the part of Harp long before the making of the deed.

But at all events, if he had such a bond for a deed, it should have been pleaded and introduced in evidence to convince the court that reliance was made thereon. This was not done.

We conclude therefore that this cause has been fairly tried, the merits thereof properly adjudicated, with substantial justice to the parties, and the judgment should be and is affirmed.

All concur.

